# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>v.<br><br>GARY JOSEPH ANTOINE,<br><br>                     Defendant. | Case No.: 3:14-CR-3141-DMS<br><br>**ORDER DENYING MOTION FOR SENTENCING MODIFICATION UNDER 18 U.S.C. § 3582(C)** |

On June 2, 2020, Defendant Gary Joseph Antoine filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The United States filed a response in opposition to Defendant's motion, and Defendant filed a reply. For the reasons given herein, the Court denies Defendant's motion.

## I.
## BACKGROUND

On February 26, 2015, Defendant Antoine pled guilty to conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Plea Agreement, ECF No. 55). Defendant was sentenced to six-and-a-half years' imprisonment, followed by three years of supervised release. (Judgment, ECF No. 118). As of June 3, 2020, Defendant had served just under three years of his sentence. (*See* Gov't's Opp'n, ECF No.

256 at 2). His expected release date is January 16, 2023. (Def.'s Mot. at 1, ECF No. 251, at 1).

Defendant is forty-six years old and suffers from several issues, including asthma and pain related to a 2016 hernia surgery. (ECF No. 251 at 11–12). Defendant alleges that his medical conditions place him at a higher risk of severe illness should he contract COVID-19 while in custody. (*See id.* at 12). Defendant is currently incarcerated in USP Atwater. (ECF No. 256 at 6). As of August 24, 2020, the Bureau of Prisons ("BOP") reports that at USP Atwater there are no current positive cases of COVID-19 among inmates and four current positive cases of COVID-19 among staff, with four inmates and five staff members having recovered from COVID-19. *See COVID-19: Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/.

Defendant filed the present motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his alleged vulnerability to COVID-19. (ECF No. 251). Defendant requests the Court modify his sentence to time served, or alternatively, to allow him to serve the balance of his term through home confinement. (*Id.* at 1). The United States opposes Defendant's motion. (ECF No. 256).

## II.

## DISCUSSION

In general, a court may not modify a sentence of incarceration once it has been imposed, unless expressly permitted by statute or Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). The First Step Act ("FSA") is such a statute. *See* Pub L. 115-391, 132 Stat. 5194, 5239 (2018). Among the criminal justice reforms implemented by the FSA, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow the defendant to move the district court for compassionate release after exhausting the Bureau of Prisons process.

Section 3582(c) of Title 18 of the United States Code provides that a court may not modify a term of imprisonment except "upon motion of Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has

"fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to act or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Administrative exhaustion is a prerequisite to filing the motion in district court, and "[e]xhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it." *United States v. Mondaca*, No. 89-cr-0655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (internal quotation marks and citations omitted). Here, Defendant submitted a request for compassionate release to the warden of FCI Atwater on April 16, 2020. (ECF No. 251 at 6). The BOP received the request on May 12, 2020. (Ex. 3 to Opp'n, ECF No. 256, at 2–3). The BOP reviewed Defendant's request and determined that Defendant did not meet the criteria based on his medical conditions. (*Id.*). The United States does not dispute that Defendant has exhausted his administrative remedies. (ECF No. 256 at 6). Because the warden has denied Defendant's request, the Court may address the motion on its merits.

The FSA allows a district court to modify a sentence and grant compassionate release if it finds "extraordinary and compelling reasons" warrant such a reduction, the reduction complies with 18 U.S.C. § 3553(a), and the defendant "is not a danger to the safety of any other person or to the community[.]" *See* 18 U.S.C. § 3582(c)(1)(A); United States Sentencing Guidelines ("U.S.S.G") § 1B1.13. Defendant contends he meets the foregoing criteria. As the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

    1. <u>Extraordinary and Compelling Reasons</u>

Defendant argues his medical conditions make him particularly vulnerable to COVID-19 and thus present extraordinary and compelling reasons for compassionate release. The Sentencing Guidelines provide that extraordinary and compelling reasons may exist for compassionate release where a defendant suffers from, among other conditions, "a serious physical or mental condition … that substantially diminishes the ability of the

defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G § 1B1.13, cmt n.1(A)(i)(I).

Defendant asserts he satisfies the requirements of § 1B1.13 based on several medical conditions: asthma, high liver enzymes, pain relating to a 2016 hernia surgery, and a 2013 hospitalization for walking pneumonia. (ECF No. 251 at 11–12). The Pre-Sentence Report ("PSR") does not mention any medical conditions. (PSR ¶¶ 85–86, 121). Nevertheless, Defendant indicated a complaint of asthma "since childhood" to a BOP medical provider. (Ex. 4 to Opp'n, ECF No. 259, at 4). Defendant notes he was designated a "chronic care" inmate on the basis of his asthma. (ECF No. 251 at 11; *see* Ex. 5 to Opp'n, ECF No. 259-1, at 7).

The United States contends that Defendant is not entitled to compassionate release because he has failed to show that his medical conditions qualify as extraordinary and compelling reasons supporting his release. (ECF No. 256 at 8). The United States acknowledges that the Centers for Disease Control and Prevention ("CDC") has identified moderate to severe asthma and liver disease as conditions that may increase the risk for severe illness from COVID-19. (ECF No. 256 at 10); *see People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. The United States further concedes that if Defendant could establish that his asthma is moderate or severe, that would qualify as a "serious physical or medical condition" under § 1B1.13. (ECF No. 256 at 12). Nevertheless, the United States argues that Defendant's prior statements and medical records do not support a finding that his asthma is moderate or severe, nor that he has any diagnosable liver disease. (ECF No. 256 at 10).

Indeed, none of Defendant's evidence describes his asthma as moderate or severe. To the contrary, the evidence shows he has received proper treatment while in BOP custody, unlike others who have been released due to their asthma. *See, e.g.*, *United States v. Tran*, CR 08-0197-DOC, 2020 WL 1820520, at *1 (C.D. Cal. Apr. 10, 2020) (granting motion for compassionate release for defendant who had severe asthma and had not

received an inhaler from BOP in two weeks). Defendant sought treatment for asthma on two occasions in the fall of 2019 and was prescribed an inhaler with Albuterol. (ECF No. 259 at 2–3, 4–5). Defendant's BOP medical records do not document any asthma attacks, and a BOP medical evaluation on January 31, 2020 indicated that Defendant had "[n]o current respiratory complaints." (ECF No. 259-1 at 13). A BOP provider refilled Defendant's inhaler on April 9, 2020, at which time the provider counseled Defendant to only use his inhaler when he is "acutely wheezing" because Defendant stated he had been using it very often, even when not wheezing. (ECF No. 259-1 at 4). The provider further advised Defendant not to use his inhaler daily. (*Id.* at 5). Although Defendant contends it is "more than likely" his asthma condition is severe, and that a medical professional may be required to determine whether his asthma is moderate or severe (Def.'s Reply, ECF No. 267, at 5), he has received treatment from multiple BOP medical professionals, none of whom indicated that his asthma is moderate or severe. His claim that there is a "possibility" his 2013 hospitalization for pneumonia continues to contribute to his asthma issues is likewise unfounded. (ECF No. 251 at 12). The United States notes there is no reference to this hospitalization in the PSR or in Defendant's BOP medical records. (ECF No. 256 at 10). The Court finds that Defendant has not provided sufficient support for a finding that his asthma is "moderate to severe" such as to qualify as a risk factor for COVID-19.

Regarding Defendant's other medical conditions, the United States correctly notes that the PSR does not mention any medical conditions, Defendant's BOP records do not document any liver disease, and a hernia is not a CDC-identified risk factor for COVID-19. (ECF No. 256 at 10; *see* PSR ¶ 121).

In sum, Defendant fails to show that his medical conditions, combined with the level of treatment he is receiving in custody, "substantially diminish[]" his ability "to provide

self-care within the environment of a correctional facility" during the pandemic. *See* § 1B1.13 cmt. n.1(A)(ii)(I).[1]

### 2. Danger to Others or the Community

Even where extraordinary and compelling reasons exist, the court must consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1.B1.13(1)(A), (2) cmt. n.1. To make this assessment, the Court is directed to the factors set out in § 3142(g), including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose. These factors are addressed in turn and overlap with the § 3553(a) factors.

In this case, Defendant was convicted of conspiracy to distribute methamphetamine, a non-violent offense. Defendant arranged for the purchase and sale of narcotics on several occasions and agreed to distribute 21 grams of methamphetamine (actual). (PSR ¶¶ 10–14, 25, 28).

The United States contends Defendant presents a danger to the community due to his prior criminal history. (ECF No. 256 at 12). Defendant has prior convictions for assault with a semi-automatic weapon, felon in possession of a firearm, and possession of body armor and metal knuckles. (PSR ¶ 29; *see* PSR ¶¶ 50, 53, 63).

---

[1] Defendant also urges the Court to "consider his condition under [§ 1B1.13] note 1(D)," (ECF No. 267 at 6), contending that the Court is free to interpret what constitutes an extraordinary and compelling reason. (*See* ECF No. 251 at 6–8). The Court declines to do so on the present motion, and instead assesses Defendant's motion within the prescribed scenarios set out in the Commission's policy statement. *See* U.S.S.G § 1B1.13, cmt n.1(A)–(D). Moreover, even if Defendant demonstrates extraordinary and compelling reasons, Defendant has not met his burden to show he is not a danger or that the § 3553(a) factors weigh in favor of his release as set forth below.

Defendant argues he does not pose a public safety risk. (ECF No. 251 at 16). He notes that his criminal history was "amended" (*Id.* at 16); the parties' sentencing memoranda in this case reflect agreement that Defendant's criminal history is properly represented by a Criminal History Category of V, rather than Category VI as originally calculated by the PSR. (*See* ECF No. 113 at 6; ECF. No. 115). In his reply, Defendant reiterates that he was convicted of a non-violent drug offense and that the Court sentenced Defendant to the lower end of the Guidelines range notwithstanding his criminal history. (ECF No. 267 at 8).

However, as part of the charged narcotics conspiracy underlying the present conviction, Defendant's co-defendant Gamble spoke with Defendant about purchasing two AK-47 rifles and giving one to Defendant. (PSR ¶ 15). Defendant then told Gamble that Defendant has a "cool little crew" and Defendant was going to use one of the firearms to commit a robbery. (*Id.*). Defendant also discussed "getting rid" of a rival gang member who was competing with Defendant and Gamble for drug customers. (PSR ¶ 16).

On balance, the Court declines to find that Defendant is not a danger to others, considering the nature and circumstances of the offense and Defendant's prior criminal history.

3. <u>§ 3553(a) Factors</u>

Finally, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) provides that the sentencing court must impose a sentence that is "sufficient, but not greater than necessary … (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(A)–(D). The court also must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1),(6).

Defendant contends these factors weigh in favor of his release because he has participated in rehabilitative programs while in custody and has requested to participate in the USP Atwater Challenge Program and the Residential Drug Abuse Program. (ECF No. 251 at 15). Defendant maintains a relationship with his wife, who is a medical professional, and asserts he would be safer in San Diego because he can stay at home with her, where she can provide for his needs. (ECF No. 251 at 16; ECF No. 267 at 10).

In response, the United States argues that any reduction in Defendant's 78-month sentence would create an unwarranted disparity, because Defendant's sentence was on the low end of similarly situated defendants in the underlying case and other cases generated by the investigation. (ECF No. 256 at 13). Defendant contends that he should be viewed alongside defendants who are "similarly situated" based on diagnoses of asthma or other illnesses placing them at risk for COVID-19 complications. (ECF No. 267 at 8).

District courts have denied motions for compassionate release brought by defendants similarly situated to Defendant with respect to asthma. *See, e.g.*, *United States v. Hernandez*, No. 10-CR-249-AWI, 2020 WL 2745697, at *3–6 (E.D. Cal. May 27, 2020) (denying compassionate release to defendant whose PSR reported no health problems but had been "sporadically" prescribed albuterol for asthma while in custody); *United States v. Beckford*, No. 18-CR-5433-DMS, 2020 WL 3960517, at *3 (S.D. Cal. July 13, 2020) (denying compassionate release to defendant convicted of drug offense who received proper treatment for asthma in BOP custody); *United States v. Bowen*, No. 18-CR-00015-DAD, 2020 WL 4612016, at *5 (E.D. Cal. Aug. 11, 2020) (denying compassionate release to defendant unable to establish his asthma was moderate to severe); *United States v. Fuller*, No. 17-CR-0324-JLR, 2020 WL 2557337, at *4–5 (W.D. Wash. May 20, 2020) (denying compassionate release to defendant who failed to submit sufficient evidence of severity of asthma). This weighs in favor of finding that a reduction in Defendant's sentence would produce an unwarranted disparity among similarly situated defendants.

The United States further argues that the § 3553(a) factors disfavor a sentence reduction because Defendant has served less than half of his sentence. As of June 29, 2020, Defendant had served 35 months of his 78-month sentence. (ECF No. 267 at 13). Defendant contends that assuming good time credit is taken into account, he has already served more than half of his sentence. (*Id.*). The Court agrees with the United States and finds the time remaining on Defendant's sentence to be significant, considering Defendant's serious conduct in the underlying case. Additionally, in denying Defendant's request for release, BOP indicated that Defendant has had three high severity disciplinary incidents while in custody. (Ex. 3 to Opp'n, ECF No. 256 at 2). The time remaining on Defendant's sentence is warranted under § 3553(a).

Although the Court is sympathetic to the risks Defendant faces in light of COVID-19, Defendant's sentence serves many of the § 3553(a) factors, such as deterring Defendant from engaging in future criminal conduct, protecting the public from future crimes, and providing rehabilitation. Moreover, Defendant is receiving appropriate care for his asthma and other conditions in custody, and thus benefits from the medical treatment provided by BOP. Accordingly, Defendant's 78-month sentence is not greater than necessary to address § 3553(a)'s overarching goals of punishment, deterrence, protection of society, and rehabilitation. These factors weigh against releasing Defendant or otherwise modifying his sentence at this time.

## III.

## CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is respectfully denied.

**IT IS SO ORDERED.**

Dated: August 26, 2020

Hon. Dana M. Sabraw
United States District Judge